OTHA GOZA *v.* CENTRAL ARKANSAS DEVELOPMENT COUNCIL, INC. ET AL

5-6235                                    496 S.W. 2d 388

Opinion delivered June 18, 1973

*Glover & Glover,* for appellant.

*Wood, Smith & Schnipper,* for appellees.

GEORGE ROSE SMITH, Justice. This is a claim for death benefits under the workmen's compensation law. The Commission denied the claim on the ground that the employee's death was caused solely by his intoxication. The circuit court affirmed that decision. The question here is whether there is substantial evidence to support the denial of the claim.

We state the facts most favorably to the Commission's decision, as is our rule. The decedent was employed at the Central Arkansas Development Council's office in Benton. On December 14, 1970, he hunted deer in the afternoon and spent that night at a deer camp, drinking beer and playing cards until after midnight. He arose early the next morning, had breakfast, and drank at least one can of beer before being driven to his home in Malvern by Foxx Ward (who did not testify).

Goza left Malvern in a car furnished to him by his employer and started toward his office in Benton. A hard rain was falling. At about 11:00 a.m., on a straight highway, Goza's car crossed the center line, with no apparent skid, and collided with a pick-up truck. There were beer cans in Goza's automobile. A test made about two and a half hours later showed Goza's blood alcohol level to be .22%. Goza died eight days later, apparently from a liver injury sustained in the collision.

Dr. Carlton, an expert witness, testified that a .22% blood alcohol level would blur the mental facilities of an average person, so that he would not be able to drive a car safely. Dr. Carlton explained that the alcohol level rises to a peak as the blood absorbs alcohol and then decreases as the liver eliminates it. A blood test does not show whether the percentage is rising or falling. Dr. Carlton could not say whether Goza's blood alcohol level at the time of the collision was greater or less than it was when the test was taken later on. He did say that if Goza had only one beer during the period of some ten or twelve hours before the test, the witness would assume that the alcohol content was then on the decline (indicating a higher level at the time of the accident).

The appellant, in seeking a reversal, relies upon the statutory provision that there is no liability for compensation when death was "solely" occasioned by the injured employee's intoxication, Ark. Stat. Ann. § 81-1305 (Repl. 1960), and upon the statutory presumption that the injury did not result from intoxication of the injured employee while on duty. Section 81-1324.

We recognize the force of those statutory provisions, by which the Commission should be guided; but we must nevertheless adhere to the substantial evidence rule in reviewing cases involving an employee's alleged intoxication. See *American Cas. Co.* v. *Jones,* 224 Ark. 731, 276 S.W. 2d 41 (1955); *Elm Springs Canning Co.* v. *Sullins,* 207 Ark. 257, 180 S.W. 2d 113 (1944). This is necessarily true, for otherwise a claim would have to be allowed whenever the record contained substantial evidence that would support either an allowance or a denial of the claim.

Here there is substantial proof in the record to sustain the Commission's decision. The Commission, as a fact-finding tribunal, was justified in concluding, as it did, that Goza's blood alcohol level made him incapable of safely operating an automobile. The Commission was also warranted in finding, as it did, that the accident was not caused by any factor other than Goza's driving his vehicle across to the wrong side of the highway and striking the oncoming truck. Inasmuch as we find substantial evidence to sustain the Commission's decision, it is our duty to uphold the denial of the claim.

Affirmed.

JONES, J., dissents.

J. FRED JONES, Justice, dissenting. I do not agree with the majority opinion in this case. I do agree that Ark. Stat. Ann. § 81-1305 (Repl. 1960) provides that there is no liability for compensation where the injury or death from injury was "solely" occasioned by intoxication of the injured employee. I also agree that the word "solely" in this provision is fortified by the statutory presumption

that the injury or death did not result from intoxication of the injured or deceased employee under Ark. Stat. Ann. § 81-1324 (Repl. 1960). The area of my disagreement lies in the application of the substantial evidence rule as applied by the majority to the known facts in this particular case.

It is my view that the statutory presumption that the injury did not result from the intoxication of the injured employee while on duty, places the burden on the respondent employer, or insurance carrier, to not only prove that the injured employee was intoxicated at the time of his injury; and not only to prove that the injury was occasioned partially because of intoxication, but it places on the employer or insurance carrier the burden of proving that the injury or death was *solely* occasioned by intoxication.

While I recognize that the decisions of the Workmen's Compensation Commission have the same force and effect as a jury verdict, we should remember that the statutory composition of our Workmen's Compensation Commission consists of two laymen and only one lawyer experienced in the practice of law. The Commission does not have the benefit of instructions from a presiding judge as does a jury and is, therefore, less restricted in turning its decisions on evidence which is less than substantial than would be the situation with a jury in a circuit court trial. Consequently, I feel that we should examine the substantiality of evidence in a workmen's compensation case perhaps a little more closely than evidence considered by a jury under proper instructions on preponderance and weight of evidence and the burden of proof.

In Wigmore on Evidence, 3rd Ed., vol. 9, footnote 18, at 300, it is stated that *substantial* evidence is evidence furnishing a substantial basis of fact from which the fact in issue can reasonably be inferred and the test is not satisfied by evidence which merely creates a suspicion or which amounts to no more than a scintilla or which gives equal support to inconsistent inferences. Substantial evidence is defined in Ford on Evidence, vol. 4, § 549, at 2760, as follows:

"Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable and material certainty and precision, compel a conclusion one way or the other. It must force or induce the mind to pass beyond a suspicion or conjecture."

Measured by these definitions it is my opinion that the appellee-employer and compensation carrier in this case did not present substantial evidence that Mr. Goza's death was *solely* occasioned by intoxication. It has become a matter of common knowledge that accidents where intoxication is not even involved occur every day when one automobile crosses the center line of the highway and collides headon with another automobile. In Larson's Workmen's Compensation Law, § 34.34, at 507 under the heading "Intoxication sole cause of injury," is found the following:

"The strictest type of statute, which requires a showing that intoxication was the sole cause of the injury, presents an opportunity for a little more controversy than the better-known concepts of causation in the other statutes. Because of the severe burden of proof, the great majority of attempts *to invoke the* defense have been unsuccessful. . . . "

Under this section in Larson are cited several cases from states having such statutes as ours, pointing up the difficult burden assumed by employers and compensation carriers in overcoming the statutory presumption against intoxication as the *sole* cause of injury. I shall only cite one of them. In the New Jersey case of *O'Reilly* v. *Roberto Homes,* 107 A. 2d 9, the decedent employee was killed when his automobile crossed to the wrong side of the highway and struck a tree. The defense that intoxication was the sole and proximate cause of the death was interposed, and in that case the New Jersey Court said:

"Thus the New Jersey rule today is that the employer must show intoxication as a cause to the exclusion of all others.

. . . 'If the Legislature intended intoxication as a concurrent or contributory cause of an injury to

effect a deprivation of the benefits of the statute it would have been a simple matter to have said so.'

\* \* \*

.The employer must show intoxication as the sole and proximate cause of the injury and it is not enough that the condition of the worker was a contributing factor in bringing about the accident. Van Note v. Coombs, 24 N.J. Super 529, 532, 95 A. 2d 12 (App. Div. 1953). The testimony was that in the afternoon decedent had a few beers, and that later that evening the decedent had three or four eggnogs containing rye whiskey. The toxicologist report showed alcoholic content in the brain to be '.1965 per cent, which is equivalent to 1.965 gram of alcohol per kilogram of brain.' According to the weight of the testimony, such a percentage of content may produce a state of intoxication which would affect different people and drivers in varying degrees.

The exact cause of the accident in the present case is open to mere speculation since there are no witnesses to the accident. There is disputed testimony of tire marks or 'skid' marks. The gas station attendant who last saw decedent shortly before the accident testified that the decedent did not appear intoxicated to him. We may speculate that perhaps the accident was caused by faulty mechanism or perhaps decedent fell asleep at the wheel of the car since it was late at night and decedent worked long hours.

Respondent has not carried the burden of proving intoxication as the sole factor of the accident as required by R.S. 34:15-7, N.J.S.A. The nature of the employee's duties exposed him to highway dangers; the accident was directly attributed to a risk of the highway to which the employment exposed him and the injuries and death followed as a rational sequence from a risk connect with the employment. Sanders v. Jarka Corp., 1 N.J. 36, 61 A. 2d 641 (1948); White v. Sindlinger, 30 N.J. Super. 525, 105 A. 2d 437 (App. Div. 1954)."

In the case at bar Goza had been up practically all night at a deer camp and while there is evidence that he

drank some beer while at the deer camp, it was he who went for groceries in order to prepare breakfast prior to leaving the deer camp and going to his home for the purpose of reporting to work. One of the most important facts in the case is that it was raining hard when Goza's vehicle crossed the center line of the highway and collided with a pickup truck and resulting in Goza's injury and subsequent death. I recognize the evidence that Goza's blood alcohol level was 0.22% in a test made about two and one-half hours after the accident, but there is no evidence as to what Goza had to drink either before or after the accident except the evidence as to one can of beer before he left the deer camp and the existence of some empty beer cans in his truck. There was no evidence of faulty driving prior to the collision and there was no evidence as to the mechanical condition of windshield wipers and steering mechanism. As I view the evidence in this case, the sole evidence as to the extent of Goza's intoxication was the percentage of alcohol found in his blood stream two and one-half hours after his accident.

It is my conclusion, therefore, that this evidence standing alone could amount to no more than a suspicion or conjecture that intoxication might have contributed to the cause of the collision and would only support a number of inconsistent inferences that could be drawn when considered in connection with the admitted hazardous driving conditions on the highway. I fail to find any substantial evidence that Goza's injury and death were *solely* occasioned by intoxication. I would reverse the decision of the trial court.