Cite as 2019 Ark. App. 438

# ARKANSAS COURT OF APPEALS

DIVISION I

**No.** CR-19-44

| | |
|---|---|
| TANISHA GILLARD<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered:** October 2, 2019<br><br>APPEAL FROM THE CRITTENDEN COUNTY CIRCUIT COURT<br>[NO. 18CR-17-848]<br><br>HONORABLE RANDY F. PHILHOURS, JUDGE<br><br>AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Tanisha Gillard was convicted in a jury trial of second-degree murder. The victim was Wesley Booker, who died as a result of multiple stab and cutting wounds. Tanisha was sentenced to ten years in prison in addition to a five-year enhancement for committing the crime in the presence of a child.

Tanisha now appeals, arguing that there was insufficient evidence to support her second-degree murder conviction. Tanisha argues that the State failed to prove that she had the required mental state to commit the offense. She further argues that the State did not disprove her claim that she acted in self-defense. We affirm.

Arkansas Code Annotated section 5-10-103(a) (Repl. 2013) provides:

(a) A person commits murder in the second degree if:

(1) The person knowingly causes the death of another person under circumstances manifesting extreme indifference to the value of human life; or

(2) With the purpose of causing serious physical injury to another person, the person causes the death of any person.

In reviewing a challenge to the sufficiency of the evidence, this court determines whether the verdict is supported by substantial evidence, direct or circumstantial. *Medlock v. State*, 2016 Ark. App. 282, 493 S.W3d 789. Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* We review the evidence in the light most favorable to the State, considering only the evidence that supports the verdict. *Davis v. State*, 2016 Ark. App. 274, 493 S.W.3d 339. Weighing the evidence, reconciling conflicts in the testimony, and assessing credibility are all matters exclusively for the trier of fact, in this case the jury. *Id.*

On the morning of September 2, 2017, Tanisha Gillard was at her home taking care of Wesley Booker's infant daughter. Frustrated that Wesley had not picked the child up from her home, Tanisha texted Wesley and informed him that she was taking the child to Wesley's mother's apartment. Wesley was in the area, and he followed Tanisha as she drove the child there. The two exchanged contentious text messages and continued to argue after they arrived at the apartment complex. During the argument, Tanisha stabbed Wesley repeatedly, causing him to drop the child. Wesley was able to remove himself from the struggle, and he took his daughter and attempted to drive away. Wesley, however, drove about ninety yards before stopping the vehicle and succumbing to the wounds inflicted by Tanisha.

After the police arrived, Tanisha spoke to the police about the incident, and she later gave a custodial statement. Tanisha admitted stabbing Wesley, but she told the police that she did so because he had attacked her. Tanisha told the police that when Wesley exited

2

his car, he punched her in the left eye. Tanisha further stated that Wesley dragged her across the pavement while stomping on her and hitting her. Tanisha told the police that while she was being assaulted by Wesley, she "picked up a piece of glass or something" and stabbed him with it. Tanisha told the police she did not know where the object was that she had stabbed Wesley with, and after searching the area the police did not recover any weapon. Tanisha denied that she had used a knife. Tanisha maintained that she was scared and did not mean to hurt anyone.

Officer John Lewis, who responded to the scene, testified that Tanisha's left eye was a little watery, she had a very small scrape on one of her knuckles, and she had small scratches on her shin. Other than that, he saw no injuries. Officer Lewis stated that Tanisha did not have torn clothes or dirt on her to indicate that she had been fighting. Officer Luke Davis, who was also at the scene, testified that Tanisha kept claiming she was injured and needed an ambulance but he did not see evidence that she was injured. Officer Bobby Morgan took Tanisha's custodial statement, and he saw no evidence that she had been attacked as she claimed. Mandy Childress, a medical assistant at the county jail, examined Tanisha and saw a "really tiny" bruise under her left eye with no swelling. Based on her experience as a medical practitioner, Mandy did not believe Tanisha had been punched in the eye.

Mike Barton testified that he was at the apartment complex and witnessed the argument between Tanisha and Wesley. Mike saw Wesley carrying the baby and walking out of the walkway by the stairwell with Tanisha following behind him. They were constantly arguing. Wesley was trying to get to his car and was telling Tanisha to leave him alone. Wesley stepped off the sidewalk and Tanisha stepped off behind him. Tanisha

3

reached over the top of Wesley from behind and stabbed him with a knife over his shoulder and into his chest. Mike stated that as Tanisha was stabbing Wesley, she was yelling and "talking crazy." After Wesley was stabbed, he fell to the ground and dropped the baby. Tanisha got on top of him and "was really going after him with the knife trying to stab him." Wesley tried to fend Tanisha off and was eventually able to pick up the baby and get to his car. Wesley died soon thereafter.

Mike testified that he was positive Tanisha had used a knife to stab Wesley. He described it as a "long and skinny" black kitchen knife that might be used to fillet fish. Mike testified that he never saw Wesley hit or even touch Tanisha before Tanisha attacked him with the knife.

Dr. Frank Peretti, a medical examiner and forensic pathologist, performed an autopsy on Wesley. Dr. Peretti determined that Wesley's cause of death was multiple stab and cutting wounds. Dr. Peretti documented a four- to five-inch stab wound below the left clavicle, two stab wounds to the left leg, and multiple cutting wounds to the back, torso, and extremities. Dr. Peretti referred to the stab wound below Wesley's clavicle as the "fatal wound," which penetrated the left lung and brachiocephalic vein and resulted in internal bleeding.

Dr. Peretti testified that there was no doubt Wesley had been stabbed with a knife due to the margins being clean as opposed to irregularly jagged (as with a shank or piece of glass). He stated that the four- to five-inch stab went through a rib bone, which takes a sharp knife and a lot of force. Dr. Peretti testified:

> I've been doing this a long time and I see a lot of these cases, and looking at the directionality of the wound path, he was stabbed from the back. So somebody was

4

standing behind him when that wound was made. I can tell that because of the way it travels down and back and the physical characteristics of the wound.

Dr. Peretti stated that Wesley's hands were clean and that there was no evidence that he had punched anyone.

Tanisha argues on appeal that there was insufficient evidence to support her second-degree murder conviction. Under this point, Tanisha first asserts that the State failed to prove that she had the requisite mental state, and she next argues that the State failed to disprove that she acted in self-defense.

We hold that Tanisha's argument that she lacked the requisite mental state is not preserved for review due to a deficiency in her directed-verdict motion below. The jury rendered a general verdict of guilty after being instructed that to sustain the charge of second-degree murder, the State must prove either that (1) Tanisha knowingly caused the death of Wesley under circumstances manifesting extreme indifference to the value of human life or (2) Tanisha, with the purpose of causing serious physical injury to Wesley, caused his death. *See* Ark. Code Ann. § 5-10-103(a). When Tanisha made her directed-verdict motion, she challenged only the proof supporting the second prong above and made no argument with respect to the first prong.

Arkansas Rule of Criminal Procedure 33.1(a) provides that in a jury trial, if a motion for directed verdict is to be made, it shall be made at the close of the evidence offered by the prosecution and at the close of all the evidence. A motion for directed verdict shall state the specific grounds therefor. Ark. R. Crim. P. 33.1(a). Pursuant to Rule 33.1(c), the failure of a defendant to challenge the sufficiency of the evidence at the time and manner

5

required in subsection (a) above will constitute a waiver pertaining to the sufficiency of the evidence to support the verdict.

On appeal, Tanisha argues that the evidence was insufficient to support a finding that she knowingly caused Wesley's death under circumstances manifesting an extreme indifference to the value of human life. However, Tanisha raised no such argument when making her motion for directed verdict. Therefore, her first argument is not preserved and we need not address it.

Tanisha's remaining argument is that the State failed to disprove her claim that she acted in self-defense. Tanisha raised the issue of justification as a defense below, and she specifically argued self-defense in her directed-verdict motion. Therefore, this sufficiency argument is preserved.

Arkansas Code Annotated section 5-2-607(a)(2) (Supp. 2017) provides that a person is justified in using deadly force upon another person if the person reasonably believes that the person is using or is about to use unlawful deadly physical force. The State must prove each element of an offense, Ark. Code Ann. § 5-1-111(a)(1) (Repl. 2013), and whether circumstances negate a defendant's excuse or justification for the conduct is an element of the offense. Ark. Code Ann. § 5-1-102(5)(c) (Repl. 2013). When reviewing the sufficiency of the State's negation of a justification defense, we employ the substantial-evidence standard of review. *Jones v. State*, 2011 Ark. App. 92.

Tanisha argues that while she clearly used force sufficient to kill Wesley, the State did not disprove that she was justified in using such force. Tanisha asserts that there was evidence of an argument, that she told the police she was punched by Wesley, and that she

sustained injuries including a bruised and watery eye that were indicative of a scuffle. Tanisha further notes that she did not flee after she stabbed Wesley, but rather remained at the scene and spoke to law enforcement. Tanisha submits that she was afraid and never intended to hurt Wesley and that because the State failed to negate her justification defense, her conviction should be reversed.

We hold that there was substantial evidence to refute Tanisha's claim that she was justified in using deadly physical force. Although Tanisha argues that she reasonably believed Wesley was using or was about to use unlawful deadly force, there was ample evidence to the contrary. The only eyewitness to testify, Mike Barton, testified that Wesley never struck or even touched Tanisha before she attacked him from behind with a knife as Wesley was walking away from her holding his infant daughter. Although Tanisha claimed to have been punched in the face and dragged on the ground by Wesley, she had no injuries to substantiate these claims. Finally, the medical examiner testified that Wesley died as a result of being forcefully stabbed over the shoulder with a knife from behind and that, in addition to this fatal wound, Wesley had been stabbed or cut multiple more times with the knife. Justification is a question of fact for the jury to resolve, *Moody v. State*, 2014 Ark. App. 538, 444 S.W.3d 389, and here the jury could reasonably reject Tanisha's justification defense on the basis of the evidence presented at trial.

Affirmed.

KLAPPENBACH and BROWN, JJ., agree.

*Dusti Standridge*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jason Michael Johnson*, Ass't Att'y Gen., for appellee.