SLIP OPINION  Cite as 2017 Ark. App. 462

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR–16–1029

|  |  |
|---|---|
| CLARENCE WHITWORTH<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered** September 20, 2017<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIRST DIVISION<br>[NO. 60CR–14–3060]<br><br>HONORABLE JAMES LEON JOHNSON, JUDGE<br><br>REVERSED |

## N. MARK KLAPPENBACH, Judge

Appellant Clarence Whitworth appeals his conviction for attempted residential burglary following a bench trial in Pulaski County Circuit Court. On appeal, Whitworth argues that the trial court erred in denying his motion for dismissal that challenged the sufficiency of the State's evidence that his intent upon entering the residence was to commit theft. Whitworth also asserts that the sentencing order incorrectly classifies this offense as a Class B felony, when the correct classification is a Class C felony. The State contends that there is sufficient evidence from which the trial court could find that appellant entered with the purpose to commit theft inside the residence, but it concedes that the sentencing order is incorrect as to the classification of the offense. We reverse the conviction, rendering the classification issue moot.

On appeal, the appellate courts treat a motion for directed verdict or dismissal as a challenge to the sufficiency of the evidence. *Anderson v. State*, 2011 Ark. 461, 385 S.W.3d

SLIP OPINION

214. The appellate court determines whether the verdict is supported by substantial evidence, direct or circumstantial. *Id*. Substantial evidence is evidence that is forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id*. The evidence is viewed in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Starling v. State*, 2016 Ark. 20, 480 S.W.3d 158. Variances and discrepancies in the proof go to the weight or credibility of the evidence and are matters for the fact-finder to resolve. *Id*. The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id*. Accordingly, when there is evidence of a defendant's guilt, even if it is conflicting, it is for the fact-finder to resolve, not the court. *Id*.

Circumstantial evidence may constitute substantial evidence to support a conviction. *Brunson v. State*, 368 Ark. 313, 245 S.W.3d 132 (2006). Guilt can be established without direct evidence and evidence of guilt is not less because it is circumstantial. *Id*. Circumstantial evidence is substantial when it excludes every other reasonable hypothesis than that of guilt. *Id*. We will disturb the fact-finder's determination only if the evidence did not meet the required standards so that the fact-finder had to resort to speculation and conjecture to reach its verdict. *Richardson v. State*, 2014 Ark. App. 679, 449 S.W.3d 718.

The evidence at trial, viewed most favorably to the State, revealed the following. Appellant was charged with attempted residential burglary of the residence of Chanel Johnson,

located at 2624 Dorchester Drive in Little Rock, on June 23, 2014.[1] The State alleged that appellant attempted to enter or remain unlawfully in the house with the purpose of committing a theft inside the house. Chanel Johnson was the sole witness for the State. She testified that she knew appellant as her mother's boyfriend. She said that appellant had been to the house many times before her mother and stepfather's divorce was finalized in May 2014 and that he was very familiar with the house. Her mother and appellant were in a dating relationship before the divorce was granted. Her mother had since moved out of the house, and Johnson assumed that her mother was living with appellant. Johnson, who graduated high school in May 2014, continued to live with her stepfather. She initially testified that she did not believe her mother had any property remaining in the house after the divorce, but then she remembered telling police that her mother did. She said that after the divorce, her mother was not supposed to be in the house, nor was appellant given permission by her or her stepfather to be in the house.

Johnson testified that on June 23, 2014, she was home, and at around 11:00 a.m., she heard a "loud thud" and "kept hearing a couple of sounds." She went to the kitchen to investigate, and she saw appellant with his arms and head inside the window; he was carrying a bag she approximated to be six inches in size. She never saw him all the way inside the residence but rather saw him in the window. Johnson began to yell and curse, asking what appellant was doing, at which point appellant jumped out of the window and fled. Johnson

---

[1]The State initially charged appellant with residential burglary but later amended the information to charge him with attempted residential burglary.

SLIP OPINION

explained that the kitchen window had problems with closing, which someone who had been to the house would have known.

Appellant testified that he was working all that day and could not have committed this crime. Appellant's former employer testified that appellant had worked for him but that he had terminated appellant on June 23, 2014. Appellant stated that he had been to the house before, that he helped his girlfriend (Johnson's mother) move her things out of the house, that if he had needed to get inside the house he had access to his girlfriend's key, and that the only items of value in the house were too big (washer, dryer, big-screen television) to carry in a small bag anyway.

Defense counsel moved to dismiss the charge, specifically challenging the State's evidence of his intent to commit a theft in the residence, but the trial court denied the motion and found appellant guilty of attempted residential burglary. This appeal followed.

Arkansas Code Annotated section 5-39-201(a)(1) (Repl. 2013) states that a person commits residential burglary if he or she enters or remains unlawfully in a residential occupiable structure of another person with the purpose of committing in the residential occupiable structure any offense punishable by imprisonment. Arkansas Code Annotated section 5-3-201(a)(2) recites that a person attempts to commit an offense if he or she purposely engages in conduct that constitutes a substantial step in a course of conduct intended to culminate in the commission of an offense whether or not the attendant circumstances are as the person believes them to be. Here, the alleged offense was theft of property while illegally in the residence, which was the offense the State had to show was

4

SLIP OPINION

intended to be committed. *See Washington v. State*, 268 Ark. 1117, 599 S.W.2d 408 (Ct. App. 1980). Theft of property is defined in Arkansas Code Annotated section 5–36–103(a)(1) as knowingly taking or exercising unauthorized control over or making an unauthorized transfer of an interest in the property of another person with the purpose of depriving the owner of the property.

Purpose can be established by circumstantial evidence, and often this is the only type of evidence available to show intent. *Holland v. State*, 2017 Ark. App. 49, 510 S.W.3d 311. Specific intent to commit a crime inside the structure cannot be inferred, however, solely from proof of an illegal entry. *Forgy v. State*, 302 Ark. 435, 790 S.W.2d 173 (1990). The State cannot shift to the defendant the burden of explaining his unlawful entry but must also establish the defendant's intent. *Norton v. State*, 271 Ark. 451, 609 S.W.2d 1 (1980). The fact–finder does not, and need not, view each fact in isolation, but rather may consider the evidence as a whole. *Harjo v. State*, 2017 Ark. App. 337, 522 S.W.3d 839; *Williams v. State*, 96 Ark. App. 277, 241 S.W.3d 290 (2006).

Appellant argues that even if the evidence is substantial that he illegally entered the residence, there is no substantial evidence that he did so with the purpose of committing therein a theft of property. We agree. The intent to commit an offense may be inferred from the defendant's conduct and the surrounding circumstances. *Durham v. State*, 320 Ark. 689, 899 S.W.2d 470 (1995); *S.C. v. State*, 2015 Ark. App. 344, 464 S.W.3d 477. The facts proved incident to an unlawful entry must show circumstances of such probative force as to reasonably warrant the inference of the purpose on the part of the accused to commit the

SLIP OPINION

theft, other than the entry itself. *Washington*, *supra*.

Appellant points to *Norton v. State*, 271 Ark. 451, 609 S.W.2d 1 (1980), where a conviction for burglary was reversed because the evidence revealed, at most, that an office building's window glass was broken, Norton was seen standing inside the doorway of the building that he had illegally entered and from which nothing was taken, and he was speaking to his friends passing by. Our supreme court held that the specific intent, which is an element of the crime of burglary, cannot be presumed from a mere showing of illegal entry. The supreme court noted also that there was no evidence that Norton fled to avoid arrest. *Id*.

In this case, there was evidence of flight. However, as appellant argues, flight following an illegal entry does not, of itself, support an inference of intent to commit theft. Appellant cites *Wortham v. State*, 5 Ark. App. 161, 634 S.W.2d 141 (1982), to support reversal. Wortham's conviction for burglary was reversed when the defendant, who had met the girls in the house before, was discovered standing in a doorway, but there was no proof that he had attempted to harm anyone, to take anything, or to commit any other crime, although he did flee when the girls inside the house screamed. The *Wortham* court reversed, holding that the illegal entry and flight upon discovery was insufficient evidence to establish intent to commit an offense punishable by imprisonment within the residence.

We cannot distinguish the present circumstances in any meaningful way from those in the cases cited by appellant. The State does not attempt to distinguish these cases. Those cases are indicative of unlawful entry into houses or buildings, and in one case flight therefrom, but that is all. Moreover, the State limited itself by charging appellant herein with

6

SLIP OPINION

intent to commit a particular crime while unlawfully in the residence: theft of property. The State failed to prove what appellant's intent might have been in entering the house, much less the intent to commit the specific crime of theft. *See, e.g., Rudd v. State*, 308 Ark. 401, 407, 825 S.W.2d 565, 568 (1992) (stating that "without appellant's prior theft and burglary convictions, the state had no evidence showing appellant's reason for unlawfully entering the Rogers' house"). The most that can be said of the State's proof here is that appellant was caught unlawfully entering his girlfriend's former residence while holding a small bag and that he fled when Johnson yelled and screamed at him. The State had no evidence to show whether the small six-inch bag was empty or contained something. Appellant was not a complete stranger to Johnson or to this residence; this illegal entry was in the middle of the day; this window was known to not close properly, providing an access point if the door was locked. There was no evidence that appellant said anything to Johnson to answer her question of what he was doing there. The State's evidence demonstrates that appellant had not fully entered the residence when he was caught and fled. Flight from the scene could reasonably have meant consciousness of guilt regarding the illegal entry itself as opposed to the intent to commit a theft inside the residence. *See Wortham, supra.* It was the State's burden to provide sufficient evidence of specific intent *to commit theft* inside the residence, and there is simply no evidence to support that particular criminal intent when he illegally entered the residence. Stated another way, these circumstances do not exclude every other reasonable inference than that appellant intended to commit a theft inside the house; thus. it cannot constitute sufficient evidence of guilt of the crime with which appellant was charged.

Reversed.

GLADWIN and HARRISON, JJ., agree.

*William R. Simpson, Jr.*, Public Defender, by: *Clint Miller*, Deputy Public Defender, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.